UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:21-cv-1812 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Thomas M. Parker |
| | ) | |
| RICHARD W. VARNER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

The United States filed suit against Richard W. Varner and two co-defendants seeking to collect delinquent taxes. Outside of this litigation, though related, the Internal Revenue Service recently attached a levy to amounts owed on promissory notes that two entities (PR, LLC, and Underwood Motors, Inc.) pay Mr. Varner each month. The levies redirect to the IRS the monthly payments those businesses would otherwise make to Mr. Varner.

On an emergency basis, Mr. Varner asks the Court either to return collection jurisdiction to the IRS so that he may administratively appeal or to require the United States to comply with the Federal Debt Collection Procedures Act. For the reasons explained below, the Court **DENIES** the emergency motion (ECF No. 31).

**BACKGROUND**

Based on the record in the present posture of the case, the Court provides the following factual and procedural background only for purposes of ruling on the emergency motion. It makes no findings of fact, which remains the province of the

jury, and forms no view on the factual or legal merits of any claim or defense on the merits.

### A. Factual Background

According to the amended complaint, Mr. Varner owned and operated numerous car dealerships in Akron, Ohio. (ECF No. 28, ¶ 18, PageID #249.) When the economy went into recession, the United States maintains that Mr. Varner was unable to secure a line of credit because of unpaid income taxes. (ECF No. 24, PageID #171.) Amidst allegations of fraud, Mr. Varner agreed to cease and desist selling cars as a licensed dealer. (*Id.*, PageID #172.)

In 2013, Mr. Varner filed for bankruptcy under Chapter 7. (ECF No. 28, ¶ 6, PageID #245.) According to the amended complaint, Mr. Varner's bankruptcy schedules listed roughly $10,000 in assets compared to over $27,000,000 in liabilities. (*Id.*, ¶ 19, PageID #249.) That proceeding discharged many of Mr. Varner's debts but, the United States contends, not his federal tax liabilities. (*Id.*, ¶ 6, PageID #245.)

According to the United States, Mr. Varner induced his sister to take ownership of three companies: Underwood Motors, Inc.; PR, LLC; and Servar Capital Group, LLC in 2009 when the IRS and private creditors were scrutinizing his dealings. (*Id.*, ¶ 36(j), PageID #257.) Soon after his discharge from bankruptcy, Mr. Varner's sister, Alma Horton, gifted Mr. Varner her ownership interests in these businesses. (*Id.*, ¶ 36(m), PageID #258.) "[A]lmost immediately" after Mr. Varner received equity in Underwood Motors and PR, LLC, he sold back his interests to both companies for over $4,000,000, for consideration consisting in part of promissory notes paid in monthly installments through varying dates over a decade or more. (*Id.*,

2

¶ 36(n), PageID #258.) Mr. Varner allegedly used $644,000 of his buy-out proceeds to purchase a property, and he created a company called Pacific Trader Ltd. to own that property. (*Id.*, ¶¶ 36(n) & 36(r), PageID #259.) The United States avers that Mr. Varner's maneuvers were designed to avoid taxes. (*Id.*, ¶ 36(r).) And the United States points to the deposition testimony of Mr. Varner's business partner of as support. (ECF No. 32, PageID #304–05 (citing ECF No. 32-2, PageID #340).)

According to the amended complaint, Mr. Varner did not pay federal income taxes in 2003, a year in which his gross income exceeded $3,000,000. (*Id.*, ¶¶ 33 & 36(a), PageID #255–56.) For outstanding principal, interest, and penalties, the Treasury Department assessed Mr. Varner a total of $2,089,256.76 for the 2003 tax year. (*Id.*, ¶ 33, PageID #255.) In addition, one of Mr. Varner's dealerships, Courtesy CPD, Inc., failed to pay employment taxes in 2008. (*Id.*, ¶ 9, PageID #246.) The United States maintains that, as the owner of Courtesy CPD, Mr. Varner was the "person required to collect, truthfully account for, and pay over" its taxes. (ECF No. 28, ¶ 9, PageID #246.) For unpaid income and Federal Insurance Contributions Act taxes, the Treasury Department made assessments against Mr. Varner totaling $204,305.18, including interest, as of August 2, 2021. (*Id.*)

  **B.**   **Procedural Background**

The United States sued Mr. Varner; his son, Richard W. Varner II; and Pacific Trader, to reduce to judgment these amounts allegedly due and owing. (ECF No. 1.) According to the United States, Pacific Trader nominally owns the property purchased post-bankruptcy, but Mr. Varner is its true owner. (*Id.*, ¶ 27, PageID #251.) The United States seeks to attach tax liens on that property because

Mr. Varner purchased it with funds to which the IRS has a superior claim. (*Id.*) Mr. Varner II is a defendant because his father allegedly gifted him at least $78,000 since this suit began and the United States wants to recover those funds too. (*Id.*, ¶ 45, PageID #262.)

On October 5, 2022, to collect income taxes from the 2003 tax year, the IRS placed a levy on the monthly payments from the promissory notes that Underwood Motors and PR, LLC make to Mr. Varner. (ECF No. 23-1, PageID #147.) Based on 11 U.S.C. § 523(a)(1)(A), the United States contends that the bankruptcy proceeding did not discharge Mr. Varner's income tax liability because he "willfully attempted . . . to evade" the tax. (ECF No. 28, ¶ 13 PageID #247.)

On an emergency basis, Mr. Varner seeks relief from the burden of having levies placed on the monthly payments from the promissory notes of Underwood Motors and PR, LLC. (ECF No. 31, ¶ 14, PageID #294.) He represents that those promissory notes fund his living expenses and that the levies impose an insurmountable financial hardship. (*Id.*; ECF No. 31-1, ¶ 3, PageID #299; ECF No. 35, PageID #359–60.) Mr. Varner avers that social security is now his sole source of income, which is inadequate to fund his monthly expenses of $30,806, leaving him some $28,000 in the red each month. (ECF No. 31-1, ¶ 4, PageID #300.)

## ANALYSIS

Defendant reads the Internal Revenue Code as creating a two-track system for the United States to collect a tax assessment. In his view, either the IRS may attach a levy or the United States may proceed in federal court, but it may not do both at

once. (ECF No. 31, ¶¶ 18–19, PageID #295–96.) Based on that reading, Defendant asks the Court either to (1) return the matter to the IRS's collection jurisdiction, which would allow Defendant to administratively appeal the attachment of the levies, or (2) require the United States, if proceeding in court, to comply with the prejudgment remedy procedures of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3101.

**I.     The Tax Anti-Injunction Act**

As a threshold matter, the United States devotes one sentence in its opposition to Mr. Varner's emergency motion to the argument that the Tax Anti-Injunction Act, I.R.C. § 7421(a), bars the relief Mr. Varner requests. (ECF No. 32, PageID #311; *see also* ECF No. 24, PageID #184.) With exceptions not relevant here, the Tax Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." I.R.C. § 7421(a). The Act allows a taxpayer to "challenge a federal tax only after he pays it, by suing for a refund." *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1586 (2021). Its applicability depends on the nature of the suit. *Id*. at 1589. If a taxpayer seeks to restrain a tax collection, the case "must be dismissed." *Id*. at 1588. But if the "suit is not for that purpose, it can go forward." *Id*.

Although the Sixth Circuit has described the Act as stripping courts of jurisdiction to hear covered lawsuits, *Ecclesiastical Order of the Ism of Am, Inc. v. I.R.S.*, 725 F2d 398, 402 (6th Cir. 1984), it has yet to address whether the Act implicates subject-matter jurisdiction or represents a claims-processing rule, *see*

*Gaetano v. United States*, 942 F.3d 727, 731 (6th Cir. 2019) (collecting cases). Because of the procedural posture in which this issue arises, the Court need not consider it.

Here, the United States sued Mr. Varner to collect taxes; Mr. Varner has not counterclaimed to restrain their collection. The Tax Anti-Injunction Act does not "prohibit taxpayers from defending suits brought by a government to obtain collection of a tax." *Jefferson County v. Acker*, 527 U.S. 423, 435 (1999). To be sure, as the United States argues, "if Varner were to sue to stop the levies, he would be met with an AIA defense." (ECF No. 24, PageID #184.) But Mr. Varner's emergency motion, made in a defensive posture, does not change "the relief the *suit* requests." *CIC Servs.*, 141 S. Ct. at 1589 (emphasis added). Because "a motion generally does not constitute a suit unto itself," the Tax Anti-Injunction Act does not bar Mr. Varner's emergency motion. *United States v. Meyer*, 50 F.4th 23, 28 (11th Cir. 2022).

In any event, "[i]t is not sufficient for a party to mention a possible argument," but to do so "in a perfunctory manner, unaccompanied by some effort at developed argumentation." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (citation omitted). Citing the statute in passing while addressing Mr. Varner's claim of hardship without any more reasoned or developed argument does not suffice to raise and preserve the argument. (*See* ECF No. 32, PageID #311.) Therefore, the Court need not consider it further.

## II.     Section 6502 of the Internal Revenue Code

Defendant relies on a provision in the Internal Revenue Code providing that the United Sates may collect a tax assessment "by levy or by a proceeding in court." (ECF No. 31, ¶¶ 17–18, PageID #295.) In relevant part, that statute reads: "Where

the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court[.]" I.R.C. § 6502(a). Defendant reads "or" in this statute as exclusive, meaning that the United States may collect its tax assessment *either* by levy *or* in court, but not both. (*Id.*)

Although the precise meaning of the word "or" can be hard to pin down, context often dictates its meaning. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141–42 (2018); *cf. United States v. Haynes*, 55 F.4th 1075, 1078 (6th Cir. 2022) (discussing how the related word "and" "has more meanings than one might suppose"). Such is the case here. The plain text of the statute and its broader structure show that Defendant's argument suffers from two fatal flaws.

First, Section 6502(a) operates as a statute of limitations, not a congressional grant of power for the collection of taxes. In other words, the statute provides that the collection of a tax assessment—whether by levy or litigation—must begin, generally, within 10 years of the assessment. Further, it states that an assessment "*may* be collected" in those two fashions. *Id.* (emphasis added). In that sense, the statute's use of the word "or" provides the same limitations period whether the government seeks to collect a tax by levy or litigation. Beyond imposing a time limit, Section 6502(a) does not curtail the means by which the United States may proceed.

Second, the Internal Revenue Code elsewhere provides the circumstances in which a levy may and may not attach. I.R.C. § 6331(a). The IRS may place a levy where a "person liable to pay any tax neglects or refuses to pay the same within 10

7

days after notice and demand." *Id.* That provision continues, "No levy may be made" (subject to exceptions) where the taxpayer has pending a court proceeding "for the recovery" of taxes already paid. *Id.* § 6331(i)(1). Active litigation to collect a tax, however, does not foreclose the IRS's ability to levy on property. Nor is the converse true. The United States may bring a civil action "[i]n any case where there has been a refusal or neglect to pay any tax, . . . whether or not levy has been made." I.R.C. § 7403(a). These provisions confirm that federal law enables the United States to attach a levy and to proceed in court to collect a tax assessment. These options are not mutually exclusive. Accordingly, Section 6502(a) uses "or" inclusively to allow the United States to employ both collection methods at the same time.

This reading is consistent with that of D.C. Circuit shortly after enactment of Section 6502 as part of the Internal Revenue Code of 1954. In *Plisco v. United States*, 306 F.2d 784, 786 n.1 (1962), the court rejected the argument that the decision to collect an assessment by levying on property bars collections of an assessment by litigation. Because of the various substantive methods the Code provides for collection of taxes, Section 6502 provides a statute of limitations and does not compel an election of remedies. *Id.* For all these reasons, the Court does not agree with Defendant that Section 6502(a) presents the United States with an either-or proposition for the collection of a tax assessment. But that premise provides the basis for Defendant's request for two alternative forms of relief. (ECF No. 31, ¶ 18, PageID #296.)

## II.A. Return of Collection Jurisdiction to the IRS

Defendant asks the Court to "release collection jurisdiction back to the [IRS]." (*Id.*, PageID #287.) Under the tax code, "[n]o civil action for the collection or recovery of taxes . . . shall be commenced unless the Secretary [of the Treasury] authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced." I.R.C. § 7401. In this way, the IRS passes what the Internal Revenue Manual calls "jurisdiction for collection" to the Department of Justice to commence proceedings in court. *See* I.R.M. § 5.17.4.2.1(5). "When [DOJ] is given authorization to initiate litigation to collect unpaid federal taxes, it assumes jurisdiction over collection actions." *Id*. Once DOJ takes control of the matter, it has exclusive authority to settle or compromise the case. I.R.C. § 7122(a).

Defendant would like to use the IRS's Collection Appeals Program to challenge administratively the attachment of the levies. *See* I.R.M. § 5.1.9.4(1) (conferring the CAP-appeal right against levy actions). But CAP is not available for "[a]ctions under control of [DOJ]," *id.* § 5.1.9.4.1(3), "until jurisdiction for collection is returned to the [IRS]," *id.* § 5.17.4.2.1(5). Even if the collection activity directed against Mr. Varner presents a significant hardship, Defendant points to no authority that requires, or even empowers, the Court to order the United States, acting through the Department of Justice, to return collection jurisdiction to the IRS. Consistent with Section 6502(a), the United States may pursue a tax collection action in court "whether or not [a] levy has been made." I.R.C. § 7403(a).

Mr. Varner was entitled to a Collection Due Process Hearing to bring an administrative challenge to the levies, but "only one hearing . . . with respect to the

9

taxable period to which the unpaid tax" relates. I.R.C. § 6330(b)(1)–(2). But that statutory right to administrative review has already passed because the first levy for the tax year at issue dates to 2008. (*See* ECF No. 23-4, PageID #162–163; ECF No. 32-1, PageID #320.) For taxpayers like Mr. Varner who miss the deadline to seek a Collection Due Process Hearing, the IRS has extended that deadline administratively by creating an equivalent hearing, which "generally follow[s] the same procedures for a timely [Collection Due Process] Hearing." I.R.M. § 5.1.9.3.2.2(1). The taxpayer can request an Equivalent Hearing for a levy within one year of receiving notice of it. *Id.* § 5.1.9.3.2.2(2). That deadline passed in 2009. (ECF No. 23-4, PageID #162.)

Defendant seeks to pursue administrative appeals of the IRS's levy attachments. (ECF No. 31, ¶ 14, PageID #294; ECF No. 35, PageID #358.) The IRS withholds the Collection Appeals Program from taxpayers against whom the United States is actively litigating. And Defendant's alternative rights to an administrative appeal have lapsed. But these circumstances do not compel the Court to order the United States to return jurisdiction for collection to the IRS—in effect, staying this case for an administrative appeal to which Defendant is not entitled.

Additionally, Defendant invokes the Taxpayer Bill of Rights, which discusses "the right to appeal a decision of the Internal Revenue Service in an independent forum" and other rights, I.R.C. § 7803(a)(3). (ECF No. 31, ¶ 16, PageID #294.) But that provision specifically references "taxpayer rights as afforded by other provisions of this title," *id.* § 7803(a)(3), and the only other provision Defendant invokes is Section 6502(a), which does not provide the requested relief.

10

### II.B. Hardship

At bottom, Mr. Varner seeks relief based on financial hardship. (ECF No. 31, ¶¶ 4, 14, PageID #290, 294; ECF No. 31-1, ¶ 5, PageID #300; ECF No. 35, PageID #360.) The time for pursuing any such relief from the Internal Revenue Service has long since expired. And "[t]ax law . . . is not normally characterized by case-specific exceptions reflecting individualized equities." *Arellano v. McDonough*, No. 21-432, ___ S. Ct. ___, slip op. at 11 (U.S. Jan. 23, 2023) (quoting *United States v. Brockamp*, 519 U.S. 347, 352 (1997)). To the extent Mr. Varner directs his motion to equity, the Court finds relief unwarranted based on the totality of the record. The levies at issue arise from income taxes dating back more than a decade. In the years since then, Mr. Varner accumulated significant wealth or assets. (ECF No. 28, ¶ 36(n), PageID #258.) Between the amount of time that has passed and his assets, the Court has no occasion to intervene even if it has the authority to do so. Finally, the Tax Code contemplates a "pay-now-sue-later procedure" that defers taxpayer challenges to a refund suit under I.R.C. § 6402. *CIC Servs.*, 141 S. Ct. at 1592; *see also Bailey v. George*, 259 U.S. 16, 20 (1922) (denying an equitable remedy where the taxpayer failed to exhaust all legal remedies, including paying under protest and seeking a refund). For all these reasons, Mr. Varner has not established that the equities favor the relief he seeks.

### III. Federal Debt Collection Practices Act

Defendant also contends that, if the United States is able to proceed in court, then it should have to attach levies using the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et seq*. (ECF No. 31, ¶ 21, PageID #297.) As relevant here, the Act provides a procedure that the United States must follow to seek a prejudgment

11

remedy in a pending case. 28 U.S.C. § 3101. In some instances, such as where a taxpayer retains a statutory right to a Collection Due Process Hearing, the United States might prefer a prejudgment remedy to attachment of a levy outside of court. *See* United States Department of Justice, Tax Division Judgement Collection Manual, § II.B. n. 3 (available at [https://www.justice.gov/tax/tax-division-judgement-collection-manual-2-prejudgment#impor](https://www.justice.gov/tax/tax-division-judgement-collection-manual-2-prejudgment#impor)). But Defendant identifies no law that *requires* the United States to take that tack. Indeed, the Act does not limit tax remedies available to the government. *See* 28 U.S.C. § 3003(b)(1); *United States v. Carney*, 796 F. Supp. 700, 703 (E.D.N.Y. 1992) (recognizing that the Federal Debt Collection Procedures Act does not curtail tax remedies); *see also United States v. Letscher*, 83 F. Supp. 2d 367, 378 (S.D.N.Y. 1999) (applying the specific limitations period of Section 6502 instead of the one under the Federal Debt Collection Procedures Act).

Defendant suggests that attachment of the levies cannot replace a prejudgment remedy because litigation is pending. In practice, placement of a levy on Mr. Varner's promissory notes may function like a prejudgment remedy. But they are not the same. Only a court may fashion a prejudgment remedy. 28 U.S.C. § 3101(a)(1) & (e). No court played a role in the attachment of the levies at issue; instead, the IRS took that action. As noted, the Act "shall not be construed to curtail or limit the right of the United States . . . to collect taxes." *Id.* § 3003(b)(1). Because the United States has not resorted to the prejudgment remedies provision, the Act has no application here.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Varner's emergency motion.

**SO ORDERED.**

Dated:  January 27, 2023

J. Philip Calabrese
United States District Judge
Northern District of Ohio